991 F.2d 799
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Elbert V. EMERSON, JR., and Pamela Emerson, Plaintiffs-Appellants,
v.
METRO STEEL STRAIGHTENING, INC., Defendant-Appellee.
 No. 92-2689.
 United States Court of Appeals, Seventh Circuit.
 Argued March 31, 1993.
Decided April 2, 1993.
 
 1
 Before BAUER, Chief Judge, EASTERBROOK, Circuit Judge, and REAVLEY, Senior Circuit Judge*
 
 Order
 
 2
 The jury returned a verdict in this tort action for plaintiffs. One special interrogatory asked: "Indicate number of years, months and days which [sic] represents [sic] the period of time over which future damages will accrue." To this the jury answered "39 yr 6 mo". It fixed the amount of future medical and health care damages at $69,000, future lost wages and other earning capacity at $249,600, and future non-economic losses at $30,000. Michigan law, which governs in this diversity action, calls on the judge to discount these future losses to present value. Mich.Comp.L. §§ 600.6305(b), 600.6306. The district judge did this using a table that sets out the present value of a lump sum payment at a time in the future--here, almost 40 years. Acting on post-trial motions, the judge declined to recalculate the present value using an annuity table that would treat the future losses as occurring periodically during the next 40 years. From this ruling the plaintiffs appeal, contending that the judge should have used Fed.R.Civ.P. 60(a) to correct his error in discounting to present value.
 
 
 3
 Defendant insists that the appeal comes too late and that plaintiffs have waived the points they now press. The jury returned its verdict on March 20, 1991, and the court entered judgment the same day. A series of post-judgment motions followed. One filed on January 21, 1992, led to the decision of June 15, 1992, from which the plaintiffs have appealed. These successive requests for reconsideration mean that the original judgment is beyond our review. Thus plaintiffs cannot protest the jury instructions or the wording of the interrogatories. But the appeal of the district judge's order of June 15 was timely, bringing that decision before us. Plaintiffs are entitled to contend that the judge has not properly translated the verdict into a judgment. This point does not depend on any objection to the instructions and form of the interrogatories--which indeed appear to be flawed under Michigan law, because they do not ask the jury to say when in the future the damages will accrue. Medical expenses may well be concentrated in the near future. Nonetheless, plaintiffs have accepted the verdict as beyond inspection. That disposes of defendant's waiver point.
 
 
 4
 Nonetheless, plaintiffs who make a series of motions invite the response that the point should have been raised sooner. Defendant asked the district judge to treat the argument as waived on that basis. The district judge replied: "[This] argument might be persuasive in typical circumstances. However, during a status conference in this matter, the Court invited the Plaintiffs to file the instant Motion. Thus, the interests of justice require this Court to avoid application of any waiver doctrines." Whatever discretion the judge possesses has been exercised in plaintiffs' favor. This subject is not jurisdictional, and the judge's willingness to relieve plaintiffs of the consequences of their delay is not an abuse of discretion.
 
 
 5
 In this court the parties vigorously dispute whether the motion falls within the domain of Fed.R.Civ.P. 60(a), which authorizes (indeed, requires) a judge to conform the records of the court to the actual decision. See United States v. Griffin, 782 F.2d 1393 (7th Cir.1986). According to plaintiffs, all they seek is the mechanical computation that turns a verdict into a judgment, which the judge did by consulting the wrong page in a book. According to the defendants, the selection of a lump sum rather than an annuity approach was studied and thus cannot be within Rule 60(a). We do not think that it matters who is right on this subject. If Rule 60(a) does not apply, then Rule 60(b)(1) does. This rule permits a judge to correct mistakes on motions filed within a year of judgment, as this motion was. Rule 60(b)(1) was amended in 1948 to permit a judge to correct his own gaffes, see Schildhaus v. Moe, 335 F.2d 529, 531 (2d Cir.1964) (Friendly, J.); Meadows v. Cohen, 409 F.2d 750, 752 n. 4 (5th Cir.1969); Wright & Miller, 11 Federal Practice and Procedure § 2858 at 176-80 (1973). Such a description fits nicely, if as defendants insist the problem is not a clerical error within the scope of Rule 60(a). (We need not join the debate, explored in Wright & Miller, whether Rule 60(b)(1) may be used to reopen fully considered decisions on points of law. The judge here did not consider the question in any depth until he acted on the post-trial motions.)
 
 
 6
 Error there was. The verdict says that the damages will accrue "over" 39.5 years. The district judge, by contrast, discounted the future damages as if it said "after". The two terms are worlds apart. The 39 years and 6 months in the verdict is plaintiff Elbert Emerson's expected life span as of the time of trial. Any damages would occur during his life and not, as the district judge assumed, after his life. Few people earn wages or incur medical expenses after death. Although the jury was not asked to specify when during Emerson's life the losses would occur, it makes no sense to treat the whole as a lump sum at death. Far better, albeit arbitrary, to treat the loss as spread evenly through the period. The district judge must use the annuity table rather than the lump-sum table to discount the award to present value.
 
 
 7
 The judgment is reversed, and the case is remanded with instructions to enter a judgment conforming with this opinion.
 
 
 
 *
 Of the Fifth Circuit, sitting by designation